UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN ANTHONY WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 4:06-CV-599 CAS |
| WEEKENDS ONLY, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff John Anthony Watson's Motion for Summary Judgment and defendant Weekends Only, Inc.'s Cross-Motion for Summary Judgment. For the following reasons, the Court will deny both motions for summary judgment.

**Background**

Defendant Weekends Only, Inc. ("WEO") operates retail furniture stores in the St. Louis area. Plaintiff Watson was employed by WEO as a material handler in the company's distribution center from August 2004 until his termination on November 29, 2005.

In early October 2005, approximately $4,500 in merchandise was stolen from a WEO trailer parked on the lot of the distribution center. After an internal investigation turned up no information, the matter was referred to the City of Berkeley, Missouri police department. In the course of their investigation, the police requested that any WEO employee who had been working at the distribution center around the time of the theft be subjected to a voice stress analysis.[1] Along with five other employees, plaintiff was scheduled for administration of the voice stress analysis at the Berkeley

---

[1] Both parties agree that a voice stress analysis is a "lie detector" test under the Employee Polygraph Protection Act, 29 U.S.C. § 2001(3).

police department on November 28, 2005. Plaintiff left work that day, but neither reported to the police department nor returned to work.

On November 29, 2005, plaintiff was terminated for insubordination. The termination report specifies that plaintiff (1) did not follow a directive given to him by a manager, (2) refused to participate in an investigation, (3) did not notify his manager that he was not taking the test, and (4) did not return to work as scheduled. Plaintiff alleges defendant violated the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. § 2002(1) and (3), by requiring, requesting, or suggesting that plaintiff submit to a lie detector test (Count I), and discharging him based on his refusal or failure to take a lie detector test (Count II). Both parties move for summary judgment on Counts I and II on the basis that no genuine factual dispute exists and that each is entitled to judgment as a matter of law.[2]

**Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing

---

[2] Plaintiff also alleges Count III under the Missouri service letter statute, § 290.140 Mo. Rev. Stat. (2000). Neither party moves for summary judgment with respect to Count III.

there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleading, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004).

**Discussion**

### A. Count I: Violation of Employee Polygraph Protection Act, 29 U.S.C. §2002(1)

Plaintiff moves for summary judgment on Count I on the basis that the undisputed facts show that plaintiff's supervisor, Larry Lynch, instructed plaintiff to take a lie detector test in violation of the EPPA, 29 U.S.C. § 2002(1). Defendant opposes plaintiff's motion, and itself moves for summary judgment on Count I, stating that it did not violate the EPPA because it merely reported a criminal act to the police, and the police elected to administer a lie detector test. Defendant asserts that it acted pursuant to a Department of Labor regulation, 29 C.F.R. § 801.4(b).

The EPPA, 29 U.S.C. § 2002(1), provides that it is unlawful for an employer "directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or

3

submit to any lie detector test." In enacting the EPPA, Congress granted the Secretary of Labor the authority to issue rules and regulations as necessary to carry out this chapter. See 29 U.S.C. § 2001; 29 C.F.R. §§ 801.4 et seq. These regulations shed light on the statute and its applicability to this case. Section § 801.4(b) states that employers who cooperate with the police during an investigation are not deemed engaged in prohibitive conduct under the EPPA "provided that such conduct is passive in nature." 29 C.F.R. § 801.4. For example, the regulations state that an employer is allowed to "releas[e] an employee during working hours to take a [lie detector] test at police headquarters." Id. This conduct is not construed as violating the EPPA. The crux of the issue in this case is whether the instruction from Mr. Watson's supervisor, Mr. Lynch, crossed the line between merely releasing Mr. Watson from work and actively requiring, requesting, or suggesting that Mr. Watson take the lie detector test.

On November 28, 2005, Mr. Lynch instructed Mr. Watson to report to the Berkeley police department to perform a stress analysis test. Mr. Lynch's deposition testimony is as follows:

> Q. You said Mr. Watson was terminated for failure to follow instructions and insubordination.
> A. That's correct.
> Q. Okay. What instructions were those?
> A. He was instructed to report to the Berkeley Police Department to perform a stress analysis test. He was scheduled at a specific time on a specific date to report. He left the facility on that date at approximately the time he was to report, and he failed to show up at the police department.
> Q. Who instructed him to do that?
> A. I did.
> Q. Okay. And what insubordination are you referring to?
> A. That was the insubordination, failure to follow instructions.
> Q. And it's the same instructions you just mentioned, correct?
> A. It is, yes.

(Lynch Dep. at 12).

Mr. Watson testified about this conversation as follows:

> Q. Did Mr. Lynch say anything to the three of you in addition to giving you something in writing?
> A. Yes.
> Q. What did he say, if you can recall?
> A. To take a lie detector test.
> Q. And did he say anything else . . . in that regard, that you can recall?
> A. No.
> Q. Did he say to you that you were supposed to go somewhere, specifically, the Police Department, to take a lie detector test?
> A. Yes.

(Watson Dep. at 66-67).

Plaintiff argues that Mr. Lynch's instruction to "report to the Berkeley Police Department to perform a stress analysis test" violates the EPPA by requiring, requesting, or suggesting that Mr. Watson submit to a lie detector test. Plaintiff supports his argument that defendant did more than simply release him from work to take the test by citing additional corroborative evidence from the record. In particular, an e-mail sent by defendant's Human Resources Manager, Karen Laffleur, to Mr. Lynch and faxed to Detective Peisker at the Berkeley police department states:

> Any employee who refuses to cooperate must be told that refusal may result in discipline [sic] action up to and including termination for insubordination. If an employee can give specific reasons for refusing to undergo the "Computer Voice Analysis," the COO and H.R. Manager will decide if there is good cause for not being tested.

(E-mail from Ms. Laffleur to Mr. Lynch, dated Nov. 18, 2005). Additionally, Ms. Laffleur stated to the Missouri Division of Employment Security that Mr. Watson "was given a directive on 11/28, along with 7 other employees, to take a voice stress analysis test for a theft investigation." (Letter from Ms. Laffleur to Missouri Division of Employment Security, dated Jan. 30, 2006).

Defendant argues that Mr. Lynch did not request that Mr. Watson submit to a lie detector test. Instead, defendant contents that Mr. Lynch merely instructed Mr. Watson to report to the Berkeley police station, where he would be asked *by the police* to submit to a lie detector test. Defendant supports this argument by citing testimony from Mr. Lynch's deposition in which Mr.

5

Lynch testifies that he knew that his employer was not requiring the employees to take the voice stress analysis test.

> Q. It says in the second paragraph [of Exhibit 4], "The employees are being asked to undergo the Computer Voice Analysis at the request of the Berkeley Police Department in conjunction with their investigation of theft at the [distribution center]. All employees will be required to sign the Berkeley Police Department's consent form prior to undergoing the test." Do you see where I'm reading from?
> A. Yes.
> . . . .
> Q. Was the employer requiring the employees to take the voice stress analysis at the consequence of insubordination?
> A. No, sir.
> Q. What would be the insubordinate activity?
> A. Failure to cooperate with the investigation.
> Q. By doing what?
> A. There could be all kinds of actions that could be deemed with incooperation [sic].
> Q. Would one of them be failing to take a voice stress analysis?
> A. No, sir.

(Lynch Dep. at 34-35).

In addition, there are multiple references in the record to the fact that the testing was being administered by the Berkeley police department, and that the police were controlling the investigation. Two e-mails sent by Ms. Laffleur to Mr. Lynch on November 18 suggest that defendant was merely cooperating in the investigation. In the first e-mail, Ms. Laffleur states, "I would go ahead and schedule with Detective Merryweather as soon as you can. If an employee refuses to cooperate, it will be up to the police department on how they want to handle. (I'll call and see what they will do.)." Later that day, Ms. Laffleur sent an e-mail to Mr. Lynch, stating that the Berkeley police would administer the lie detector test, and the police (not defendant) would determine if additional testing was necessary. "This is to confirm that the Berkeley Police Department will begin administering the Computer Voice Analysis to all night shift employees . . . . If the police determine it is necessary to continue the testing, the next group will be the weekend day shift." The record also

6

shows that defendant was well aware of the provisions of the EPPA, and actively sought to avoid violating it. For example, on November 17, Ms. Laffleur sent Mr. Lynch an e-mail, stating:

> I spoke with Det. Merryweather this afternoon to see if they will comply with the Employee Polygraph Protection Act. . . . I've asked Det. Merryweather to send me a copy of their written consent form for review. Larry, please check to make sure you have an employment law poster posted in an area visible to all employees. Check this poster to make sure the Employee Polygraph Protection Act is listed on the poster.

(E-mail from Ms. Laffleur to Mr. Lynch, dated Nov. 17, 2005).

Both parties recognize that few cases have been decided under 29 U.S.C. § 2002(1). Defendant relies on Mennen v. Easter Stores, 951 F. Supp. 838, 853-54 (N.D. Iowa 1997), to support its argument that this case falls within the safe harbor of § 801.4(b). In Mennen, the district court found that the employer did not violate the EPPA by merely permitting the police to ask its employee to submit to polygraph testing in connection with an investigation of in-store theft. Plaintiff distinguishes the decision because in that case the employer did not ask the employee to take the lie detector test. Rather, the police asked the employee to take the lie detector test.

In Mennen, the court addressed the distinction between an employer merely cooperating with the police and actively participating in an investigation. Unfortunately, Mennen is of limited value to this case because the court did not consider whether an employer violates the EPPA by itself asking an employee to take polygraph examination at police headquarters.[3]

> Here, Detective Allen requested that Mennen take the polygraph examination. Mennen consented to take the examination, claiming that he wanted to clear his name. The police department needed [the employer's] permission to request that Mennen take the polygraph; however, at that point in time, [the employer] had not taken an active role in the investigation . . . . Although [the employer] had the power to veto the administration of the polygraph examination, it did not require, request, suggest, or cause Mennen to take or submit to a polygraph examination.

---

[3] Plaintiff argues that the Mennen court "recognized that an actual request by an employer itself would 'cross the line' into unlawful activity, even if the test would be administered by the police." The Court could not find any support in the Mennen decision for this proposition.

7

> Rather, Mennen chose to take the polygraph examination at the request of the Mason City police department. While it may not be free from all doubt, the court finds that [the employer] had not yet crossed that line between merely cooperating with the Mason City police department and actively participating in the investigation. Therefore, the court concludes that Mennen has not established that [his employer] violated section 2001(1) of the EPPA.

Mennen, 951 F. Supp. at 853.

This distinction between an employer cooperating with the police versus actively participating in the investigation is at the heart of this case. Based on the record, a jury could find that defendant did not violate the EPPA because it merely cooperated with the Berkeley police department by releasing its employees from work to take the lie detector test. However, based on the record, a jury could also find that defendant violated the EPPA by playing an active role in the investigation, and that it required, requested, or suggested that plaintiff take a lie detector test. The Court finds that a jury issue exists as to what role defendant played in the police investigation. If a jury concludes that defendant merely released Mr. Watson during working hours to take a lie detector test at police headquarters, defendant would not be liable under the EPPA. However, if a jury concludes that defendant actively participated in the investigation by instructing plaintiff to take the lie detector test, defendant would be liable under the EPPA. In any event, this is a disputed factual issue within the province of the jury. The Court cannot conclude as a matter of law that defendant violated the EPPA, 29 U.S.C. § 2002(1).

### B. Count II: Violation of Employee Polygraph Protection Act, 29 U.S.C. § 2002(3)

Plaintiff moves for summary judgment on Count II, stating that defendant terminated plaintiff in violation of the EPPA, 29 U.S.C. § 2002(3), because plaintiff refused to take a lie detector test. In response, defendant moves for summary judgment itself, stating that it did not terminate plaintiff

for refusing to take the lie detector test, but rather for not following the instruction to report to the police station and for not returning to work.

The EPPA, 29 U.S.C. § 2002(3), states that employers may not "discharge, discipline, [or] discriminate against in any manner . . . any employee or prospective employee who refuses, declines, or fails to take or submit to any lie detector test." 29 U.S.C. § 2002(3). Defendant's termination report states that it terminated plaintiff for insubordination. The termination report specifies that plaintiff (1) did not follow a directive given to him by a manager, (2) refused to participate in an investigation, (3) did not notify his manager that he was not taking the test, and (4) did not return to work as scheduled.

To resolve this matter on summary judgment, the Court would have to interpret the instruction given to plaintiff by his supervisor, Mr. Lynch. Both plaintiff and Mr. Lynch testified as to their recollection of these instructions at deposition. Mr. Lynch testified that he instructed plaintiff "to report to the Berkeley Police Department to perform a stress analysis test." Plaintiff testified that Mr. Lynch told him "[t]o take a lie detector test." See Part A, supra. Plaintiff interprets the instruction as asking him to take the polygraph test, while defendant contends that Mr. Lynch simply instructed plaintiff to report to the Berkeley police station where he would be asked by the police to submit to the lie detector test. Both parties apparently agree that defendant was terminated because he failed to follow his supervisor's instructions, but the parties cannot agree on their interpretation of these instructions.

The Court finds that Mr. Lynch's testimony is ambiguous. His instruction could be interpreted as requesting plaintiff to take the lie detector test or it could be interpreted as requesting plaintiff to report to the police station. Therefore, a jury question exists as to whether defendant terminated plaintiff for his refusal or failure to take the lie detector test. Based on the record, the

Court cannot determine as a matter of law that defendant terminated plaintiff in violation of the EPPA, § 2002(3).

**Conclusion**

For the foregoing reasons, the Court finds there are genuine issues of material fact that preclude the entry of summary judgment on Counts I and II.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment is **DENIED**. [Doc. 25]

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED**. [Doc. 31]

_____
**CHARLES A. SHAW
UNITED STATES DISTRICT JUDGE**

Dated this 23rd day of May, 2007.